IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JAMES C. MALONE, III                                          PLAINTIFF

v.                          Civil No. 12-3098

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                               DEFENDANT

MEMORANDUM OPINION

Plaintiff, James C. Malone, III, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (Commissioner) denying

his claim for a period of disability, disability insurance benefits ("DIB"), supplemental security income

("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C.

§ 405(g).

I.      **Procedural Background:**

Plaintiff applied for SSI and DIB on April 25, 2008. (Tr. 10.) Plaintiff alleged an onset date of

December 1, 2005 due to Epilepsy, Attention Deficit Disorder, Mood Disorder, Depression, Alcohol and

Drug Abuse (currently in recovery), rheumatoid arthritis in his lower back, and edema in legs and hands.

(Tr. 159.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an

administrative hearing, which was held on September 16, 2010. (Tr. 30.) Plaintiff was present to testify

and was represented by counsel. The ALJ also heard testimony from Plaintiff's mother and father. (Tr.

30.) Plaintiff later amended his onset date to December 1, 2006. (Tr. 10.)

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner
Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, Plaintiff was 50 years old, possessed a high school diploma, and had completed approximately one and one-half years of college. (Tr. 858.)  The Plaintiff had past relevant work experience ("PRW") as a mechanic helper, shipping and receiving clerk, and a custodian. (Tr. 16.)

On November 22, 2011, the ALJ concluded that the Plaintiff had the following severe impairments: Polysubstance Abuse, Back Pain, Personality Disorder, Epilepsy, and Hepatitis C. (Tr. 13.) The ALJ found based on all of the impairments, including the substance use disorder, that Plaintiff maintained the residual functional capacity to perform light work except that he "is unable to meet competitive work standards in: remembering work-like procedures, maintaining attention for two hour segments, maintaining regular attendance and punctuality, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods." (Tr. 15.) The ALJ also found that his impairments or treatment would cause him to be absent from work more than four days per month. (Tr. 15.) Through the use of post-hearing interrogatories to Vocational Expert ("VE") Sarah Moore, the ALJ determined that the Plaintiff is unable to make a successful vocational adjustment to work that exists in significant numbers in the national economy. (Tr. 17.) A finding of "disabled" was therefore appropriate. (Tr. 17.)

However, the ALJ also found that "[i]f the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairment list[ings]."(Tr. 17.) Without the substance use, the ALJ found that that Plaintiff maintained the residual functional capacity to perform light work with the following limitations: "claimant is limited to work where interpersonal contact is incidental to the work performed. He is also limited to work where the complexity of tasks is learned and performed rote, with few variables and little judgment required. In addition, the claimant is limited to work where the supervision required is simple, direct, and concrete.

2

Moreover, the claimant must avoid hazards, including unprotected heights and moving machinery. The claimant can occasionally climb, balance, crawl, kneel, stoop, and crouch. Furthermore, the claimant can frequently finger and handle." (Tr. 18.) The VE opined that if Plaintiff stopped his substance abuse, he would be able to perform work as an assembler, inspector/tester, or machine tender. (Tr. 22.) Therefore Plaintiff would not be disabled if he stopped substance use. (Tr. 23.)

Plaintiff requested a review by the Appeals Council on December 9, 2010. (Tr. 5.) The Appeals Council denied the appeal on June 5, 2012. (Tr. 1.)

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence  is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical

3

Case 3:12-cv-03098-JRM   Document 11   Filed 01/31/14   Page 4 of 10 PageID #: 117

or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.    Discussion:

Plaintiff raises two issues on appeal: 1) the ALJ erred in finding that the Plaintiff's substance abuse was a material contributing factor in his disability; and 2) the ALJ erred in failing to find Plaintiff's neck pain a severe impairment. (Pl.'s Br. 14, 19.)

### A.    Plaintiff's Substance Abuse

Plaintiff argues that the ALJ erred in determining that substance abuse was a material factor contributing to disability because 1) he has permanent impairments caused by substance abuse; 2) the ALJ did not consider the continuation of symptoms during periods of sobriety; and 3) the ALJ made his materiality determination without "any kind of medical support." (Pl.'s Br. 14.) We agree that the ALJ

4

AO72A
(Rev. 8/82)

did not fully and fairly develop the record as to Plaintiff's RFC in the event that he stopped his substance abuse.

In 1996 the Social Security Act was amended to deny benefits to a claimant if alcoholism or drug addiction[2] was a contributing factor material to the determination of disability. 42 USCA § 423(d)(2). Pursuant to 20 CFR § 416.935 (SSI), 20 CFR § 404.1535 (DIB), and SSR 13-2p, the "key factor" in determining if substance abuse is "material" is whether the claimant would still be disabled if the claimant stopped substance abuse. "The focus of the inquiry is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause." *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000) (citing 20 C.F.R. § 404.1535(b)(1); *Jackson v. Apfel*, 162 F.3d 533, 537-38 (8th Cir. 1998)).

The 1996 amendment thus added another layer to the familiar five-step disability evaluation. In order to determine if substance abuse is "material," the ALJ first evaluates all of the claimant's impairments, including the substance abuse. If the claimant is considered disabled at that point in the process, the ALJ must then project which of the impairments, if any, would remain at a disabling level if the claimant stopped their substance abuse. SSR 13-2p; *Brueggemann v. Barnhart*, 348 F.3d 689, 694-95 (8th Cir. 2003).

"Determining whether a claimant would still be disabled if he or she stopped [the substance abuse] is, of course, simpler if the claimant actually has stopped." *Pettit*, 218 F.3d at 903. However, active and ongoing substance abuse does not automatically require a finding that the substance abuse is material. 13-2p; *Brueggemann*, 348 F.3d at 695. Rather, the ALJ must take on the difficult task of untangling the warp threads of the claimant's substance abuse from the woof threads of the claimant's

---

[2]The Agency recognizes that terms alcoholism and drug addiction are medically outdated as opposed to the terms substance abuse or substance use disorder, but continues to use the terms and the abbreviation DAA because they are used in the statute. SSR 13-2p. For the purposes of this opinion, the term substance abuse will be used in place of DAA.

5

other impairments in order to examine the hypothetical cloth that remains. "[A]lthough the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other." *Snead v. Barnhart,* 360 F.3d 834, 839 (8th Cir. 2004); *Brueggemann ,* 348 F.3d at 694-95 (citing *Pettit*, 218 F.3d at 903).

The burden of proving that DAA is not material falls on the claimant. *Id*. at 693. However, "[i]f the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow." *Id*. "In colloquial terms...a tie goes to [the claimant]." *Id.*

We are troubled by four points in the ALJ's opinion.

First, the ALJ appears to have mischaracterized key findings from Dr. Nancy Bunting and Dr. Anthony Fischetto regarding Plaintiff's psychiatric status and substance abuse. Dr. Fischetto performed a consultative psychiatric examination on August 8, 2008. (Tr. 565.) In his findings he stated that "[if] he abstains from drugs and alcohol, he can learn to cope better." (Tr. 570.) The ALJ reported Dr. Fischetto's findings as follows: "Dr. Fischetto opined that if the claimant were to abstain from substance abuse, he could learn to cope better with the typical mental/cognitive demands of basic work-like tasks." (Tr. 21.) A review of Dr. Fischetto's opinion did not reveal information within it that would support the ALJ's addition to Dr. Fishetto's statement. The ALJ then used this mischaracterization of Dr. Fischetto's statement in his *Polaski* analysis to discredit Plaintiff's testimony concerning his abilities to make occupational, performance, social and other adjustments. (Tr. 21.)

Dr. Bunting performed a consultative psychiatric examination on August 21, 2009. (Tr. 857.) In her summary of conclusions she stated:

> "Antisocial personality disorder is very much suspected but there is not enough history to really support the diagnosis. One of the long term results of cocaine abuse is brain damage to the neural receptors such that depression results. His reported depression would be consistent with long term cocaine use. This depression would be organically based."

6

(Tr. 861.) The ALJ noted that Dr. Bunting opined that the Plaintiff's cognitive and mental demands were impaired due to long term cocaine use, but neglected to include that fact that Dr. Bunting stated that the damage would be organically based. (Tr. 15.) This omission is particularly troubling because organic brain damage is precisely the type of physical or mental damage caused by long-term substance abuse that the Agency expressly recognizes as irreversible. SSR 13-2p. When presented with this evidence the ALJ had a duty to consider it, and, if necessary, more fully develop the record concerning it. He did not.

Second, the ALJ does not appear to have fully developed the record as to Plaintiff's alleged periods of sobriety. Pursuant to the Agency's own regulations and policies, in cases of co-occurring mental impairment the ALJ must investigate documentation of period(s) of abstinence to determine what, if any, medical findings and impairment-related limitations remained in the absence of substance abuse. SSR 13-2p. In order to find that the substance abuse is material the ALJ "must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period." SSR 13-2p. "If the evidence in the case record does not demonstrate the separate effects of the treatment for [substance abuse] and co-occurring mental disorder(s)" then the ALJ should not find the substance abuse to be material." SSR 13-2p.

We cannot discern how the ALJ could have adequately considered the Plaintiff's function during periods of sobriety when the ALJ never clearly identified a period of sobriety. Instead, the ALJ pointed out the inconsistencies in the evidence concerning alleged periods of sobriety, such as different dates of reported sobriety, multiple relapses in the medical records, and positive drug tests. (Tr. 15.) However, in his *Polaski* analysis, he indicated that Plaintiff's self-reported activities of daily living "during periods of sobriety. . .have been somewhat greater than the claimant has generally reported." (Tr. 20.) The ALJ also stated that "medical evidence supports the conclusion that the claimant would continue to experience some limitations and restrictions, even if substance use were discontinued; but only to the extent detailed in the residual functional capacity above." (Tr. 21.) The ALJ cites several sets of medical

7

records for this statement, including some from York County Prison, a period where Plaintiff was presumably sober during his incarceration. A review of the prison records indicates that Plaintiff continued to suffer from and be treated for seizures and depression, as well a various physical ailments.(Tr.412-523.) Once the Plaintiff made allegations of periodic sobriety and once the medical record indicated a diagnosis of "partial remission" for substance abuse (Tr 569.),  the ALJ had a duty to clearly identify periods of sobriety and  and to expressly evaluate Plaintiff's function during those times. He did not.

Third, there is no indication in the record that any treating, examining, or non-examining source[3] has specifically given a medical opinion which projects the likely results of substance abuse cessation on the severity and functional effects of Plaintiff's physical impairments for work. Nor is there any indication in the record that any medical opinion has been sought to interpret the medical evidence concerning the separate effects of Plaintiff's  treatment for substance abuse and co-occurring mental disorder.  *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984) (It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC. If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record); 13-2p ("At the hearing and appeals levels of the administrative review process, ALJ's and the Appeals Council may seek assistance from medical experts in interpreting the medical evidence regarding the separate effects of treatment for DAA and a co-occurring mental disorder(s)).

---

[3]Plaintiff submitted a "neuropsychological evaluation" by Dr. Vann Smith, PhD which did not include Plaintiff's substance abuse in his evaluation and indicated that the Plaintiff did not take any prescription drugs. The ALJ properly discounted this opinion as inconsistent with the record as a whole pursuant to *Johnson v. Apfel*, 240 F.3d 1145 (8th Cir. 2001). *See also Flynn v. Astrue*, 2012 WL 6209990, *4 (noting that several courts have affirmed decisions where the ALJ gave little weight to or discounted the one-time examination reports of Dr. Vann Smith).

Fourth, the ALJ failed to discuss the Plaintiff's consistently low GAF scores or indicate why they were not included in the analysis. While a GAF score alone is not determinative, the Eighth Circuit Court of Appeals has recognized that GAF scores are relevant evidence in evaluating a disability claim. *See Pates-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009) (a history of GAF scores at or below 50 indicates "serious impairment in social, occupational, or school functioning."); *Brueggemann*, 348 F.3d at 695 (a history of GAF score of 50 reflects a serious limitation on a claimant's ability to perform basic life tasks; VE testified that an individual with a GAF score of 50 could not work); *Viers v. Astrue*, 582 F. Supp 1109 (N.D. Iowa 2008) (GAF score of 50 during periods of alleged sobriety and periods of substance use required remand to fully develop the record)). In this case Plaintiff was assigned scores of 50, 20, 31, 40, 48-58, 41, and 45 between 2008 to 2010. Given such consistently low scores, the ALJ had a duty to at least consider them in his discussion of Plaintiff's RFC. He did not.

Because the ALJ did not fully and fairly develop the record as to Plaintiff's RFC in the event that he stopped his substance abuse, a remand is necessary. On remand, The ALJ is directed to recontact Dr. Bunting in order to more fully develop the record concerning her comment about organic brain damage. The ALJ is also directed to order a consultative examination with a neurologist to evaluate if the Plaintiff's long-term substance abuse has produced permanent physical or mental damage, and if so, what the effects of that damage are on Plaintiff's functional capabilities. The ALJ is also directed to determine if there are any identifiable periods of sobriety, and to make the appropriate evaluation of Plaintiff's function during that time. Finally, the ALJ should include an express consideration of the Plaintiff's GAF scores in his post-remand opinion.

**B.      Plaintiff's Neck Pain**

Plaintiff argues that the ALJ erred by not including his degenerative neck disease to be a severe impairment because the objective medical evidence for that was actually stronger than for his lower back. (Pl.'s Br. 19-20.) We disagree.

9

Plaintiff testified that he had continual pain throughout the day in his neck and shoulders. (Tr. 50.) A CT scan on July 6, 2009 showed "anterior fusion of C5 and C6 vertebral bodies" and "degenerative spurring at the C4-C5 and C6-C7 vertebral levels." This is congruent with an MRI in 2001 and an X-ray in 2004, which both showed fusion at C5-C6. (Tr. 636, 384.) However, the records from 2001 and 2004 label the fusion as congenital, and, as the Commissioner pointed out, did not prevent him from heavy work in the past. (Tr. 16.) Additionally, Plaintiff has only complained of neck pain once in the record to a chiropractor in December of 2004 after a car accident in November of 2004. (Tr. 384.) Further, the record is replete with physician exam notations of "neck normal" or "neck supple," up to and including Plaintiff's last physical examination in the record on April 21, 2010. (Tr. 407, 531, 533, 542, 617, 621, 624, 670, 673, 685, 707, 721, 764, 837, 840, 849, 931.)

Because Plaintiff has not sought treatment for neck pain and the objective medical records do provide evidence of any issues other than the congenital one at this time, the ALJ's decision concerning Plaintiff's neck is supported by substantial evidence. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider); *Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001) (in assessing credibility, the court noted that plaintiff had not sought treatment from any physician in the seven months prior to administrative hearing).

## IV.    Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 31st day of January, 2014

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

10